ROSS LLP
Peter W. Ross (SBN 109741)
pross@rossllp.la
Eric C. Lauritsen (SBN 301219)
elauritsen@rossllp.la
1900 Avenue of the Stars, Suite 1870
Los Angeles, California 90067
Telephone: (424) 704-5600
Facsimile: (424) 704-5680

MICHAEL J. PERRY, ESQ.
A PROFESSIONAL LAW CORPORATION
Michael J. Perry (SBN 123214)
mjp@michaeljperrylaw.com
475 Washington Blvd.
Marina del Rey, CA 90292
Telephone: (310) 496-5710

Attorneys for Plaintiff
PATRICK BERTRANOU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| PATRICK BERTRANOU, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITEDHEALTH GROUP INCORPORATED, UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation; UNITEDHEALTHCARE INSURANCE COMPANY, a Connecticut corporation; and UHC OF CALIFORNIA, a California corporation; UNITEDHEALTHCARE BENEFITS PLAN OF CALIFORNIA, a California corporation; and DOES 1-25, inclusive, etc., et al.<br><br>Defendants. | Case No. 2:25-cv-03366-AB-E<br>(Hon. Andre Birotte Jr., Presiding)<br><br>[Removed from State Court on 04/16/25]<br><br>**SECOND AMENDED COMPLAINT FOR ERISA RELIEF** |

Plaintiff Patrick Bertranou ("Bertranou") complains and alleges as follows:

**JURISDICTION**

1. Plaintiff brings this action for monetary and equitable relief pursuant to §§ 502(a)(1) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1) and 1132(a)(3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

**VENUE**

2. Venue lies in the Central District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plaintiff's medical insurance contract is administered in this District, the breaches alleged took place in this District, and Defendants may be found in this District.

**PARTIES**

3. Plaintiff Bertranou is an individual residing in Beverly Hills, California.

4. Plaintiff is informed and believes that Defendant UNITEDHEALTHCARE BENEFITS PLAN OF CALIFORNIA ("UBPOC") is a California corporation with its company with its principal place of business in the state of California.

**FACTS**

5. Plaintiff Bertranou is trained as a medical doctor but has found business success in a variety of endeavors. He has practiced medicine. He has manufactured and sold surgical implants used to treat deformities of the spine through his company OrthoTec.

6. During the period 2016 – 2024, Plaintiff Bertranou, through his company OrthoTec, LLC, was provided medical coverage by the Defendants identified above ("UBPOC Contract"). A true and correct copy of the UBPOC Contract is appended hereto as Exhibit 1. During that period, OrthoTec paid Defendants a total of $314,667.19 in insurance premiums. Plaintiff was in good

health and, therefore, made very little use of medical insurance. In short, it was a very good business transaction for UBPOC.

7. In 2016, Plaintiff Bertranou turned 65 years of age and OrthoTec had less than 20 employees. Medicare became his primary medical insurer and Defendant UBPOC Plaintiff's secondary medical insurer.

8. In 2019, Plaintiff Bertranou was diagnosed with stage-three bladder cancer. That cancer had also spread to his prostate.

9. Plaintiff Bertranou has and continues to be under care for the foregoing medical issues and most if not all medical expenses (aside his co-pay) were made by Medicare as advanced payment as primary insurer.

10. Since 2016, while OrthoTec continued paying premiums to Defendants, in excess of $300,000 over that period, Defendant UBPOC paid about $26,882.37 for some medical bills Plaintiff incurred between 2018–2024 as they related to his cancer, as payments on these bills were advanced payments made by Medicare.

11. As to those payments made by Defendant UBPOC, it pledged to Plaintiff in its Explanation of Contract Benefits ("EOB") that:

> "YOU HAVE MEDICARE AS YOUR PRIMARY INSURANCE. YOUR BENEFIT FOR THIS CLAIM WAS DETERMINED BY USING THE AMOUNT APPROVED BY MEDICARE. MEDICARE PAYS FIRST AND YOUR CONTRACT PROCESSES THE CLAIM AFTER MEDICARE. **YOUR CONTRACT WILL ONLY PAY IF OUR BENEFIT IS MORE THAN MEDICARE'S PAYMENT."** **[emphasis added.]**

A true and correct copy of one of the EOB's sent by Defendant UBPOC to Plaintiff in connection with his cancer is appended hereto as Exhibit 2.

12. Plaintiff is informed and believes that the Medicare payments made in this matter by Medicare were not deemed by Medicare as "payments" but only as "advance towards care."

13. Plaintiff is informed and believes that the term "our benefit" in the

context of medical insurance, refers to the financial or other compensation that an insurance company (the insurer) is obligated to provide to the policyholder or their beneficiaries when a covered event or loss occurs, as defined by the insurance policy. In the context of medical insurance, this include payments for medical expenses incurred by the insured or other specified losses.

14. Plaintiff is informed and believes that since Medicare did not make any payment with regard to Plaintiff's cancer other than by compromising the amount due to it from Plaintiff in the amount of about $31,000; Defendant UBPOC's benefit was much more than the nonpayment by Medicare and Defendant has to pay for Plaintiff's care which was not paid for by Defendants.

15. In 2024, Plaintiff Bertranou received an insurance settlement from UCLA for the medical negligence he was subjected to at UCLA in connection with the cancer. By law, the settlement obtained was disclosed to Medicare, which, under the Medicare Secondary Payer Provision, Medicare is entitled to recover payments made under USC Title 42 Section 1395y (b) (2) Section 411.20.

16. Per USC Title 42, Medicare is demanding payment of all sums paid as "advance towards care" and paid conditionally by Medicare for the care Plaintiff Bertranou received, initially the amount of $119,947.02 exclusive of interests ("Medicare Demand"). A true and correct copy of the pertinent Medicare letters with the private information redacted are appended hereto as Exhibit 3.

17. Ultimately, Medicare did not pay anything for Plaintiff's cancer, except accepting a request from Plaintiff for a e $31,000 discount from Medicare bills to Plaintiff as described below. Even with Medicare's approximate reduced demand payment of about $31,000, Medicare did not pay $86,855.12 for Plaintiff medical coverage which were to be paid by Defendants per their contractual written pledge to pay if its "… benefit is more than Medicare's payment". In substance, Medicare demands that Plaintiff pay for the medical insurance that Defendant UBPOC did not cover or pay but should have covered or paid.

18. Plaintiff Bertranou has made repeated demands that Defendant to comply with its obligation as the secondary insurer and to reimburse Plaintiff Bertranou for the sum of $86,855.12 for care never paid by Defendant. Defendant paid only some part of the medical care of Plaintiff which were not paid by Medicare in the amount of about 26,882.77.

19. Defendant has totally ignored Plaintiff's demands and have not responded to Plaintiff Bertranou's repeated written and telephonic requests for payment.

20. Since the filing of this lawsuit, after Plaintiff's repeated requests, Medicare has reduced its demand by about $31,000 to $86,855.12 (Principal $81,794.11; Interest $5,061 and accruing monthly). Plaintiff has negotiated an installment contract for the repayment of the medical care of Plaintiff, which should have been paid by Defendant UBPOC.

21. Defendant owed Plaintiff the following duties, among others, to: (a) honor the UBPOC contract for the entire policy duration; (b) conduct prompt, reasonable, and diligent investigation of the facts of the case to determine the validity of the claims made by Plaintiff against Defendant; (c) evaluate Plaintiff's claims fairly; (d) attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim where liability is reasonably clear; (e) act promptly and reasonably in settling the claim; (f) not to reject a reasonable and fair offer of settlement; (g) not put its insured through unnecessary litigation; (h) act in good faith and deal fairly with Plaintiff.

22. Plaintiff is informed and believes that Defendant UBPOC breached the UBPOC Contract by, among other things, failing to: (a) conduct prompt, reasonable, and diligent investigation of the facts of the case to determine the validity of the claims made by Plaintiff against Defendant; (b) evaluate Plaintiff's claims fairly; (c) attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim where liability is reasonably clear; (d) act promptly reasonably in settling the

claim; (e) not to reject a reasonable and fair offer of settlement; (f) not put its insured through unnecessary litigation; and (g) act in good faith and deal fairly with Plaintiff.

## FIRST CAUSE OF ACTION

**[Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) Against Defendants]**

23. Plaintiff refers to and incorporates by this reference all preceding paragraphs as though set forth in full.

24. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits Plaintiff, a contract beneficiary, to bring a civil action to recover benefits due to him under the terms of the UBPOC Contract, to enforce his rights under the terms of this contract, and/or to clarify his rights to future benefits under the terms of this contract.

25. The medical contract's terms that confer reimbursement benefits to Plaintiff are contained in, inter alia, the following portions of the UBPOC Contract under Covered Health Services, commencing on Page 94 of the UBPOC Contract:

- preventing, evaluating, diagnosing or treating a Sickness, Injury, Mental Illness, Substance-Related and Addictive Disorders, condition, disease or its symptoms;
- and are "Medically Necessary" as further defined in the medical contract (Page 100 et seq.).

26. Section 1 of the Covered Health Care Services starting on Page 14 of the UBPOC Contract and continue to Page 40 of that contract also confers the at issue benefits of the medical contract that Plaintiff was supposed to receive from Defendant. In essence, Plaintiff's treatment for stage three bladder cancer and prostate cancer are covered by the medical contract.

27. Defendant UBPOC has and continue to refuse to reimburse Plaintiff for any part of the $86,855.12. Plaintiff has or will pay Medicare for his past medical care while such payments were to be made by Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For general damages in an amount to be proven at trial, estimated at no less than $86,855.12.

2. Declare that Defendant breached the terms of its medical insurance contract with Plaintiff by failing to pay Plaintiff any medical expenses which was more than the benefit provided to Plaintiff by Defendant UBPOC.

3. Order that Defendant pay Plaintiff the amount of medical coverage paid by Plaintiff for his care.

4. For reasonable attorney's fees and costs of suit pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

5. For prejudgment interest at the statutory rate; and

6. For such other and further relief as the Court deems equitable and just.

DATED: August 17, 2025

ROSS LLP
Peter W. Ross
Eric C. Lauritsen

Michael J. Perry, Esq.
A Professional Law Corporation
Michael J. Perry

By: /s/ Michael J. Perry
Michael J. Perry
Attorneys for Plaintiff Patrick Bertranou